IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROUTE APP, INC.,<br><br>         Plaintiff,<br><br>v.<br><br>MARC HEUBERGER, ELEVATIONE, and NAVIDIUM APP,<br><br>         Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>Case No. 2:22-CV-291-TS-JCB<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. For the following reasons, the Court will deny the Motion.

I.      BACKGROUND

Plaintiff Route App, Inc. ("Route" or "Plaintiff") is a package tracking company that provides post-purchase services and products, like shipping insurance, to e-commerce merchants.[1] Merchants may access Route's services through various third-party marketplace applications for e-commerce, like the Shopify App, or Route may directly seek out prospective merchant partners.[2] Route is allegedly the first company to develop a shipping protection application or a widget that could be integrated into merchants' Shopify websites.[3]

According to Route, to facilitate use of its shipping insurance, Route is required to give merchants access to its confidential and proprietary information,[4] including the application code,

---

[1] Docket No. 2 ¶ 14.

[2] *Id.* ¶ 19.

[3] Docket No. 4 at 20; Docket No. 4-2 ¶ 6.

[4] Docket No. 2 ¶ 23.

design, functionality, and pricing of Route's products.[5] For this reason, merchant partners must agree to Route's Terms and Conditions[6] which include a number of restrictive covenants.

In October 2020, Defendant ElevatiONE, an e-commerce cosmetics company, became a Route merchant partner[7] by and through Marc Heuberger, who purchased Route Protect on behalf of ElevatiONE in his role as a consultant.[8] Route alleges that Heuberger is the founder of ElevatiONE, but Heuberger argues that ElevatiONE is a London-based company with several owners and founders, none of whom are Heuberger.[9]

In January 2021, ElevatiONE and Heuberger ended their relationship with Route and decided to "self-insure."[10] Heuberger then created the Navidium App in December 2021.[11] Navidium offers e-commerce merchants a widget that enables merchants to charge their customers a premium to cover shipping issues.[12]

Route claims that Navidium is "a copy-cat, knock-off version" of its product.[13] Route also claims that Heuberger made disparaging, false, and misleading statements about Route to divert its current and prospective merchant partners.[14] Route alleges that in a social media post Heuberger stated that Navidium "is actually the same" as Route and that "[R]oute is why we

---

[5] Docket No 4-1 ¶ 9.
[6] Docket No. 2 ¶ 24.
[7] *Id.* ¶ 34.
[8] *Id.* ¶ 35; *see* Docket No. 29 ¶ 3.
[9] Docket No. 2 ¶¶ 7, 34; Docket No. 25 at 4 n.21.
[10] Docket No. 2 ¶ 39.
[11] *Id.* ¶ 41.
[12] *Id.* ¶ 42.
[13] *Id.* ¶ 41.
[14] *Id.* ¶¶ 41, 61–70.

made this app."[15] According to Route, through Navidium's twitter account and on several different occasions, Heuberger tweeted about Route, including the following messages:

> I made [Navidium] public to screw with Route (Dec. 30, 2021).
>
> …
>
> [I] [a]lso hate Route. Hated route so much I built @navidiumapp to let merchants get off them and self insure (Jan. 12, 2022).
> …
>
> Sure I'm biased. Heck I'm so biased I built an app to empower merchants to get off route and run shipping protection themselves (Mar. 23, 2022).[16]

Thereafter, on March 30, 2022, Route sent a letter to Heuberger and Navidium demanding that they "cease and desist all unlawful conduct,"[17] but Defendants failed to comply.

On April 28, 2022, Route commenced this action against Heuberger, ElevatiONE, and Navidium App, alleging that they unlawfully copied Route's confidential and proprietary information in violation of Route's Terms and Conditions. Route also alleges that they instituted a smear campaign against Route tarnishing its goodwill, reputation, and relationships with merchant partners. Now before the Court is Route's Motion for Temporary Restraining Order and Preliminary Injunction which seeks to prohibit Defendants from:

> (i) soliciting Route's merchant partners or diverting prospective merchant partners through tortious and disparaging means;
> (ii) making, posting, or otherwise publishing defamatory or disparaging statements, or from refraining to delete or take down any and all existing defamatory or disparaging statements already made or published in or on a public forum;
> (iii) soliciting, recruiting, or encouraging any Route customer, employee, or consultant to reduce, alter, or terminate its relationship with Route for 24 months;
> (iv) diverting any potential Route customer away from Route for 24 months;
> (v) providing shipping protection of any kind for 24 months;

---

[15] *Id.* ¶¶ 52, 60.

[16] Docket No. 4-3 ¶ 23.

[17] Docket No. 4-1 at 165–68.

3

(vi) retaining, using, or disclosing any and all Route confidential and proprietary information;
(vii) operating their competing shipping protection business in its current form, which was developed using Route's confidential and proprietary information;
(viii) installing shipping protection software that infringes on Route's trademarks or knowingly accepting payment from merchants using their shipping protection software to infringe on Route's trademarks; and
(ix) any other such acts as the Court deems appropriate for injunctive relief.[18]

Defendants Heuberger and Navidium App (collectively, "Defendants") filed a response brief to Plaintiff's Motion,[19] but Defendant ElevatiONE did not. The Court heard argument on Plaintiff's Motion on July 20, 2022.[20]

## II. LEGAL STANDARD

To obtain a preliminary injunction or a temporary restraining order, the movant has the burden of demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[21] "[A] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[22] Accordingly, "the right to relief must be clear and unequivocal."[23]

---

[18] *See* Docket No. 4 at 1–2.

[19] Docket No. 44.

[20] Docket No. 64.

[21] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003)).

[22] *Id.* (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

[23] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1256).

III.     DISCUSSION

A.  IRREPARABLE HARM

To be entitled to a preliminary injunction, Plaintiff must establish irreparable harm absent the issuance of an injunction. "Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[24] The "irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages."[25] This is "not an easy burden to fulfill."[26] "Purely speculative harm will not suffice."[27]

"[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[28] The Tenth Circuit has stated that "the irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."[29] Although loss of goodwill and market position are factors that can demonstrate irreparable harm, ultimately "[a] plaintiff suffers irreparable injury when the

---

[24] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotation marks and citation omitted).

[25] *Greater Yellowstone Coal.*, 321 F.3d at 1258 (quotation marks and citation omitted).

[26] *Id.* (citation omitted).

[27] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[28] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

[29] *Dominion Video Satellite, Inc.*, 356 F.3d at 1264; *see also Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1498 (10th Cir. 1993) (loss of unique position in marketplace evidenced by harm to goodwill and difficulty in calculating damages).

court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."[30]

Although Route argues in its Motion that damages "cannot be measured in any certain terms," Route concedes elsewhere that its harm is quantifiable by monetary relief.[31] For example, in its Complaint, Route requests monetary relief seeking "no less than $4,150,050 ($138,335 in monthly loss of revenue over 30 months)."[32] Additionally, declarations in support of Plaintiff's Motion identify at least three metrics for calculating Route's alleged damages. Route's Vice President of Sales stated that Route measures its "total opportunities created" by aggregating "meaningful events" with prospective merchants, including: "calls, demos, emails, testing, [and] downloading of Route's app" and states that such "opportunities" are down 31 percent since the first quarter of the 2022.[33] Route's Director of Customer Success also identified the number of merchant partner's lost and Route's loss of monthly revenue as result of Defendants' alleged unlawful conduct.[34] That declaration states that "Route's churned revenue as a result of merchants leaving Route for another competitor is presently up 430 percent on a year over year basis."[35] Such admissions suggest that Route's damages are quantifiable, which strongly weighs against Route's request for injunctive relief.

Additionally, Defendants argue that Route cannot show irreparable harm because of their delay in seeking a preliminary injunction. Delay in filing a motion for injunctive relief suggests a

---

[30] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).
[31] Docket No. 2 ¶¶ 119, 127, 131, 138, 174; Docket No. 49 ¶ 9; Docket No. 51 ¶¶ 7, 9.
[32] Docket No. 2 ¶ 174.
[33] Docket No. 49 ¶ 9.
[34] Docket No. 51 ¶ 7.
[35] *Id.* ¶ 9.

lack of immediacy and irreparable harm.[36] According to Defendants, Route waited one year after it knew of Heuberger's plans to create Navidium in March 2021, and three months after Navidium became publicly available in December 2021 before seeking injunctive relief in April 2022.[37] Route argues that Defendants' claim that it "waited more than a year" to file suit, mischaracterizes the timeline. Route states that it heard of Navidium from merchants in early 2022 and received copies of Defendants' solicitation in March 2022. Route then retained counsel and sent Defendants a cease-and-desist letter on March 30, 2022, to which it received a response on April 18, 2022. Route then filed suit on April 28, 2022.

Even assuming that the clock started in early 2022 when Route heard of Navidium from merchants, Route still waited approximately three months before seeking injunctive relief. The Tenth Circuit has held that a three-month delay in filing for injunctive relief does not defeat a claim of irreparable injury when the delay was attributable to plaintiff's attempts to negotiate and the need for further documentation of the harm.[38] Other than one cease-and-desist letter sent in March 2022, there is nothing in the record to indicate that Route was attempting to negotiate or resolve the dispute which would justify its delay in seeking injunctive relief. Thus, Route's delay is another factor that cuts against a finding of irreparable harm.[39] Based on the foregoing reasons, the Court finds that Route has failed to demonstrate irreparable harm.

---

[36] *GTE Corp.*, 731 F.2d at 678.

[37] Docket No. 45 ¶¶ 48, 56.

[38] *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994); *see RoDa Drilling Co.*, 552 F.3d at 1211–12 ("[T]he record clearly establishes that RoDa's delay in filing its complaint arose from its attempts to resolve the dispute, rather than a decision merely to 'sit on its rights.'").

[39] *Kan. Health Care Ass'n, Inc.*, 31 F.3d at 1543–44 ("[D]elay in seeking preliminary relief cuts against finding irreparable injury.") (internal citation and quotation marks omitted); *RoDa Drilling Co.*, 552 F.3d at 1211 ("[D]elay is but one factor in the irreparable harm analysis.").

B. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Route argues that it has shown a likelihood of success on the following claims: (1) breach of contract, (2) commercial disparagement/trade libel/injurious falsehood, (3) tortious interference with contractual relations, (4) misappropriation of trade secrets, and (5) contributory trademark infringement under the Lanham Act. However, many of Plaintiff's claims require resolution of significant factual disputes central to those claims, including whether Defendants even had access to Route's proprietary and confidential information. Based on a careful review of the record, the Court is not convinced that Route's right to relief is "clear and unequivocal" at this stage. Thus, this factor prevents the Court from issuing injunctive relief.

C. BALANCE OF HARDSHIPS

The Court finds that the harm Route may suffer if injunctive relief is not issued does not outweigh the harm Defendants may suffer. Route is a billion-dollar company[40] and the fact that it has lost approximately forty customers out of thousands does not outweigh the harm of preventing Defendants from marketing and selling Navidium, which would potentially shut it down.[41] Thus, the balance of hardship weighs in favor of Defendants.

D. PUBLIC INTEREST

The Court finds that it is not in the public interest to issue injunctive relief where doing so would interfere with a competitive marketplace.[42] Moreover, it is not in the interest to issue an

---

[40] Docket No. 2 ¶ 40.

[41] *See* Docket No. 51; Docket No. 64.

[42] *Utah Med. Prod., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1312 (D. Utah 1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000); *Am. Phytotherapy Rsch. Lab'y, Inc. v. Impact Nutrition, Inc.*, 201 F. Supp. 2d 1145, 1151 (D. Utah 2002) ("Public interest favors competition in its various forms."); *Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*, 429 F. Supp. 2d 1248, 1259 (D. Utah 2005) (explaining that the public interest is "best served by competition and the availability of lower priced alternative products").

injunctive relief where the other factors significantly weigh against it, especially considering the sweeping relief sought by Plaintiff.

Ultimately, the Court finds that Plaintiff has failed to satisfy the high standard required to obtain a temporary restraining order or preliminary injunction. Therefore, the Court will deny Plaintiff's Motion.

## IV.   CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 4) is DENIED.

DATED this 26th day of July, 2022.

BY THE COURT

_____
Ted Stewart
United States District Judge