IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROUTE APP, INC.,<br><br>                    Plaintiff,<br>v.<br><br>MARC HEUBERGER, and NAVIDIUM APP,<br><br>                    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>Case No. 2:22-cv-00291-TS-JCB<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the Court on Defendants Marc Heuberger's and Navidium App's ("Navidium") (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim and Defendant Navidium's Motion to Dismiss for Lack of Personal Jurisdiction,[1] and Plaintiff Route App's ("Route") Motion for Leave to File Second Amended Complaint.[2] For the following reasons, the Court will grant Plaintiff's Motion and grant in part and deny in part Defendants' Motion.

## I.        BACKGROUND

Route is a package tracking company that provides shipping insurance to e-commerce merchants.[3] Defendant Heuberger was a customer of Route prior to developing his company, Navidium, which is also a merchant shipping insurance business. Route brings claims against Defendants for breach of contract, commercial disparagement and defamation per se, intentional

---

[1] Docket No. 94.

[2] Docket No. 149.

[3] Docket No. 78 ¶ 17.

tortious interference with contractual relations, false advertising, and contributory trademark infringement.

The Court previously granted Defendant Navidium's Motion to Dismiss for lack of personal jurisdiction in September 2022.[4] Route renewed its claims against Heuberger and Navidium with its First Amended Complaint in October 2022.[5] In their second Motion to Dismiss now before the Court, Defendants assert that the Court lacks personal jurisdiction over Navidium and that each of Route's claims lack a sufficient factual and legal basis. Route App's Motion requests leave from the Court to file a Second Amended Complaint to add a new Defendant, Antiqur Rahman, and add a claim for civil conspiracy.

## II.     DISCUSSION

### A.   MOTION TO AMEND

The Federal Rules of Civil Procedure instruct that "court[s] should freely give leave" to amend "when justice so requires."[6] "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given."[7] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[8]

---

[4] Docket No. 70.

[5] Docket No. 78.

[6] Fed. R. Civ. P. 15(a)(2).

[7] *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted); *Frank v. U.S. W. Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).

[8] *Jefferson Cty. Sch. Dist No. R-1. v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999).

Route seeks leave to amend its First Amended Complaint to add Antiqur Rahman as a Defendant and a civil conspiracy claim. Heuberger opposes Route's Motion, arguing that Route unduly delayed its filing, that he would be unduly prejudiced by its timing and additions, and that the Motion is futile.

As to undue delay, Heuberger contends that Route knew of Rahman's existence long before it filed its Motion—as early as August 2022. In support, Heuberger cites to Route's First Amended Complaint, in which Route references Heuberger's associate "David Fern." At that time, Route concluded that David Fern was "not a real person" and that "Heuberger [was] the *sole* founder, owner, director, and officer of Navidium."[9] Later, in separate interrogatory answers, dated January 11, and February 24, 2023, Heuberger named Antiqur Rahman as a co-founder and developer of Navidium, and disclosed that Rahman uses the pseudonym "Jason Fern." Given the close proximity of the date of the disclosures regarding Rahman to the date of Route's Motion, the Court finds that Route did not unduly delay in filing its Motion to Amend. Further, the fact that Route's Motion was filed before the deadline for amending pleadings in the Court's Scheduling Order counsels against a finding of undue delay.

Heuberger next argues that the Second Amended Complaint will cause undue prejudice by prolonging discovery and delaying resolution of the case. While "a need to reopen discovery, [or] a delay in proceedings . . . are indicators of prejudice,"[10] "[c]ourts typically find prejudice only when the amendment unfairly affects the [nonmoving party] 'in terms of preparing their

---

[9] Docket No. 78 ¶ 66 (emphasis in original).

[10] *US Magnesium, LLC v. ATI Titanium LLC*, No. 2-17-CV-0092-3HCN-PMW, 2020 WL 2616212, at *2 (D. Utah May 22, 2020).

defense to the amendment.'"[11] Here, Route's Motion was submitted several months before the close of fact discovery and was therefore timely.  The Court finds that any additional delay caused by amendment is not so significant as to constitute undue prejudice.

Lastly, Heuberger argues Route's proposed Second Amended Complaint is futile, because the claims against Rahman would be subject to dismissal for lack of personal jurisdiction. Route alleges that Rahman is the co-founder of Navidium and that "the claims against Rahman are predicated on the same conduct and actions already pled as to the existing Defendants."[12] Based on these allegations, the Court finds Route's proposed amendment is not futile on its face and will allow amendment. However, this finding does not preclude Rahman from challenging the Court's exercise of personal jurisdiction once joined in the case.

### B.  NAVIDIUM APP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Navidium moves, as it did previously,[13] to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court has carefully reviewed the additional jurisdictional allegations contained in the Amended Complaint. For substantially the same reasons stated in the Court's previous Order,[14] the Court finds no basis to exercise specific jurisdiction over Navidium.

Route also argues that this Court has personal jurisdiction over Navidium pursuant to Federal Rule of Civil Procedure 4(k)(2). "To assert jurisdiction under Rule 4(k)(2), the Court must find that (1) Plaintiffs' claim arises under federal law; (2) Defendant is not subject to

---

[11] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).

[12] Docket No. 149, at 4.

[13] *See* Docket No. 52.

[14] Docket No. 70, at 4–8.

jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction does not offend the Constitution."[15] "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there."[16]

Navidium asserts that the State of New York is the appropriate forum for Route's claims under Rule 4(k)(2).[17] By naming the state of New York as an appropriate forum, the Court finds that the use of Rule 4(k)(2) is precluded. Instead, Navidium has consented to jurisdiction in New York. Thus, the Court will grant Navidium's Motion to Dismiss.

### C.  DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

When considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations are accepted as true and viewed in a light most favorable to the non-moving party.[18] To withstand dismissal, a plaintiff must plead both a viable legal theory and provide "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"[19] Plaintiff's reliance upon "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not suffice."[20] Further, "[d]etermining whether a complaint states a plausible

---

[15] *Ivanti, Inc. v. Shea,* No. 2:18-CV-92 TS, 2018 WL 1033205, at *7 (D. Utah Feb. 21, 2018).

[16] *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.,* 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 552 (7th Cir. 2001)).

[17] Docket No. 118, at 4 n.10.

[18] *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

[19] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20] *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[22] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[23]

Route asserts the following claims against Heuberger: breach of contract; commercial disparagement, trade libel, and injurious falsehood; defamation per se; tortious interference with contractual relations; and false advertising and contributory trademark infringement in violation of the Lanham Act. Heuberger moves the Court to dismiss Route's claims in their entirety.

1. BREACH OF CONTRACT

Heuberger asserts that Route's Breach of Contract claim should be dismissed under several theories: Heuberger's acceptance of the Terms lacked consideration; the restrictive covenants are unenforceable as a matter of law; and Route insufficiently pleaded Heuberger's breach of the non-competition and non-disparagement provisions. The Court will consider these arguments under Delaware law.[24]

---

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[22] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[23] *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[24] Docket No. 79, at 15.

Heuberger argues that the restrictive covenants in the Terms are not supported by adequate consideration as to Heuberger because ElevatiONE was Route's "merchant partner," not Heuberger.[25] The Court rejected this argument previously in addressing Heuberger's Motion to Dismiss for Lack of Jurisdiction.[26]  For the same reasons previously stated, the Court finds that the restrictive covenants were supported by adequate consideration.

Next, Heuberger argues that the non-compete and non-solicitation provisions in the Terms are unenforceable. Under Delaware law, courts do not "mechanically enforce" non-compete and non-solicitation provisions.[27] The Court must review the restrictive covenants to assure they meet the basic requirements of contract formation and "(1) [are] reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities."[28] When assessing "reasonableness," the court focuses on whether the non-compete is "essential for the protection of the [enforcing party's] economic interests."[29]

The non-compete provision contained in the Terms reads:

> At all times during the Term and thereafter for a period of twenty-four (24) months, You and Your subsidiaries and affiliates covenant and agree that You shall not provide Shipping Protection of any kind to any party unless You or Your affiliates obtain all necessary and required licenses and permits for such offering from all relevant federal and state agencies and regulatory bodies.[30]

---

[25] Docket No. 94, at 16–17.

[26] Docket No. 42, at 11.

[27] *FP UC Holdings, LLC v. Hamilton*, No. CV 2019-1029-JRS, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020) (unpublished) (citation omitted); *O'Leary v. Telecom Res. Serv., LLC*, No. 10C-03-108-JOH, 2011 WL 379300, at *4 (Del. Super. Ct. Jan. 14, 2011) (unpublished).

[28] *Lyons Ins. Agency, Inc. v. Wilson,* No. CV 2017-0092-SG, 2018 WL 4677606, at *5 (Del. Ch. Sept. 28, 2018) (unpublished) (citation omitted).

[29] *FP UC Holdings*, 2020 WL 1492783, at *6 (citing *Norton Petroleum Corp. v. Cameron*, No. Civ.A. 15212-NC, 1998 WL 118198, at *3 (Del. Ch. Mar. 5, 1998)).

[30] Docket No. 79, at 3–4.

Under Delaware law, courts may "enforce an agreement without express territorial scope and establish a reasonable geographical limitation where there is none . . . ."[31] "The reasonableness of the geographical limitation should not be judged merely in terms of absolute physical distances. The purpose of such a covenant is to protect an [enforcing party's] goodwill in a given market."[32] "If this market . . . extends throughout the nation . . . and the [contracting party] would *gain* . . . some advantage in any part of that market, then it is appropriate that a [party] subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location."[33]

The Terms specify that a contracting party may not provide competing shipping protection unless it obtains the licenses and permits from the relevant governmental jurisdictions in which it operates. The non-compete provision seemingly places a boundless geographical restriction on the party agreeing to the Terms but adds a simple qualification to avoid the provision: obtain the requisite licenses and permits. The non-compete provision at issue is not a "blanket prohibition on [competitors] working elsewhere; rather, it protects [Route's] legitimate economic interests" by requiring would-be competitors to lawfully operate according to administrative requirements in jurisdictions Route already occupies.[34] By necessity of the shipping industry, the geographic scope of Route's market is nearly worldwide. Route seeks to preserve its goodwill with its customer base by preventing its former customers from taking

---

[31] *Delaware Exp. Shuttle, Inc. v. Older*, No. CIV.A. 19596, 2002 WL 31458243, at *12 (Del. Ch. Oct. 23, 2002) (unpublished).

[32] *Id.* at *13.

[33] *Research & Trading Corp. v. Pfuhl*, No. Civ. A. 12527, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992) (unpublished) (emphasis in original).

[34] *Lyons*, 2018 WL 4677606, at *6.

advantage of its business model to provide non-regulated services to its current users. Thus, the non-compete provision is reasonable in scope. Further, a term of 24 months is not an unreasonable duration for a non-compete provision between commercial parties.[35]

Thus, at this stage, viewing the allegations in the light most favorable to the non-moving party, the equities weigh in favor of finding that the non-compete provision is enforceable.

> The non-solicitation provision in the Terms reads:

> At all times during the Term and thereafter for a period of twenty-four (24) months, You will not for any reason, whether directly or indirectly, (i) solicit, recruit, or encourage any Route customer, employee, or consultant to reduce, alter, or terminate its relationship with Route or (ii) divert any potential Route customer away from Route.[36]

Heuberger argues that Route's non-solicitation provision is unenforceable because it is "designed to eliminate competition," by "preclud[ing] Heuberger—for twenty-four months after using the App—from 'directly or indirectly' soliciting Route customers, employees, or consultants to reduce or terminate their relationship with Route."[37] Route alleges that Heuberger breached this covenant when he allegedly "recruited dozens, if not hundreds, of merchant partners away from Route" with a widespread email solicitation campaign.[38] Route asserts that the non-solicitation provision is "limited in scope" and "minimally invasive," in part because it applies only to Route's merchant partners and their agents, and "merely prohibits them from directly targeting Route's customers."[39]

---

[35] *Weichert Co. of Pa. v. Young,* C.A. No. 2223-VCL, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007) (unpublished) ("Covenants of two-years' duration are consistently held to be reasonable.").

[36] Docket No. 79, at 5.

[37] Docket No. 94, at 19 (quoting the Terms).

[38] Docket No. 78 ¶ 131.

[39] Docket No. 114, at 20.

Based on the facts alleged, the Court finds that the scope and duration of the non-solicitation restriction are reasonable. Two years is a reasonable amount of time to allow Route to further develop client relationships free from the competitive influence of former merchant partners, who become familiar with Route's practices and procedures while using its products. Thus, the Court concludes that, viewing the evidence in the light most favorable to Route, the non-solicitation provision advances a legitimate interest in protecting Route's goodwill and existing customer relationships, and the equities weigh in favor of finding that the non-solicitation provision is enforceable.

Lastly, Heuberger argues that Route's Breach of Contract claim fails because the non-disparagement provision in the Terms is unenforceable under the Consumer Review Fairness Act ("CRFA")[40] and inapplicable because Heuberger's comments reflected his personal experiences with Route, and were either substantially true or statements of opinion. The non-disparagement clause reads: "[a]t all times during the Term and thereafter, neither Party will, whether directly or indirectly, make any disparaging, negative, or false or misleading statements with respect to the other Party."[41] Route responds that CRFA does not apply to commercial solicitations and that the non-disparagement agreement is not subject to common-law defamation requirements.

The CFRA "voids provisions of form contracts that restrict a party to that  contract from conducting a 'performance assessment of, or other similar analysis of, including by electronic means, the goods, services, or conduct of a person.'"[42] Viewing Heuberger's comments in the light most favorable to Route, the Court concludes that at least some of Heuberger's comments

---

[40] 15 U.S.C. § 45b.

[41] Docket No. 79, at 5.

[42] *CrowdStrike, Inc. v. NSS Labs. Inc*., C.A. No. 17-146-GMS, 2017 WL 588713, at *5 (D. Del. Feb. 13, 2017) (quoting 15 U.S.C. § 45b).

are not a "performance assessment of, or other similar analysis of," Route's services. The comments are more akin to a commercial solicitation of a potential customer than a consumer review, and thus fall outside the scope of the CFRA. Moreover, there is nothing to suggest that the CFRA was designed to be used as a defense to a private breach of contract action.[43] Further, the disparagement agreement is not limited by common-law defamation requirements.

Therefore, the Court finds that Route has sufficiently pleaded its Breach of Contract claim and denies Defendants' Motion to Dismiss as to this Claim.

### 2. COMMERCIAL DISPARAGEMENT, TRADE LIBEL, INJURIOUS FALSEHOOD, AND DEFAMATION PER SE

Route brings defamation-related claims against Defendants arguing that they have published false statements on social media and in emails to harm Route and steal its customers.[44] Defendants move to dismiss Route's defamation-based claims on the ground that the challenged statements are "either substantially true or matters of opinion."[45]

In determining whether a statement is defamatory, Delaware courts determine "first whether alleged defamatory statements are expressions of fact or protected expressions of opinion."[46] Delaware courts have developed a four-part test to determine whether an average reader would view a statement as one of fact or opinion:

First, the Court should analyze the common usage or meaning of the challenged language. Second, the Court should determine whether the statement can be

---

[43] *Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, 2018 WL 7204066, at *3 (N.D. Cal. Jan. 22, 2018) ("The CRFA is . . . by its terms enforced only by the Federal Trade Commission or state attorneys general.").

[44] *See Neurotron Inc. v. Med. Serv. Ass'n of Pa., Inc.*, 254 F.3d 444, 448 (3d Cir. 2001) (noting that the terms "trade libel," "commercial disparagement," and "injurious falsehood" refer to the same tort),

[45] Docket No. 94, at 24.

[46] *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) (quoting *Riley v. Moyed*, 529 A.2d 248, 251 (Del. 1987)).

objectively verified as true or false. Third, the Court should consider the full context of the statement. Fourth, the Court should consider the broader social context into which the statement fits.[47]

"[A] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."[48]

The Court finds that the statements Route attributes to Heuberger are statements of opinion. Most of the statements Route attributes to Defendant cannot be objectively verified as true or false because they reflect an asserted feeling about an experience with or belief about Route. Further, "[e]ven using language that might in some contexts be deemed factual is insulated from liability when in the specific context in which it is published, it is plain that it is being used figuratively to express an opinion."[49] The statements Heuberger made that assert a potentially verifiable fact—such as whether claims are "more often than not denied," whether Route requires a police report to be filed for a lost package, or whether Route commits a "serious breach of customer data"—when read in the statement's full context, would be understood as hyperbolic or figurative and clearly representing an opinion. Nothing before the Court suggests that the alleged statements of opinion imply reliance on knowledge of undisclosed facts. Therefore, the Court finds that Route has not sufficiently pleaded its defamation-related claims against Defendants and grants Defendants' Motion to Dismiss as to Counts Two and Three.

---

[47] *Riley*, 529 A.2d at 251–52 (citations omitted).

[48] *Id.* at 251.

[49] *Cousins v. Goodier*, No. S20C-11-036 CAK, 2021 WL 3355471, at *3 (Del Super. Ct. July 30, 2021) (unpublished), *aff'd* 283 A.3d 1140 (Del. 2022).

### 3. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

Route argues that Heuberger knowingly interfered with valid contracts between Route and third-party merchant partners by: using confidential information to develop Navidium; engaging in commercial disparagement; making fraudulent misrepresentations about Route and Navidium; inducing Route's merchant partners to use Navidium; and engaging in unlawful activity, including collecting a fee without proper insurance licenses or permits.

To state a claim for tortious interference with contract, "a plaintiff must plead facts that demonstrate the existence of: (1) a valid contract (2) about which defendant has knowledge, (3) an intentional act by defendant that is a significant factor in causing the breach of the contract, (4) done without justification, and (5) which causes injury."[50] Generally, "one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other."[51] "The adjective 'improper' is critical. For participants in a competitive capitalist economy, some types of intentional interference with contractual relations are a legitimate part of doing business."[52] Determining when intentional interference becomes improper requires a "complex normative judgment relating to justification" based on the facts of the case that "inevitably involves an evaluation of many factors,"[53] including:

---

[50] *Thomas v. Harford Mut. Ins. Co.*, No. Civ. A. 01C-01-046 HD, 2003 WL 220511, at *5 (Del. Super. Ct. Jan. 31, 2003) (unpublished).

[51] *In re P3 Health Grp. Holdings, LLC*, No. 2021-0518-JTL, 2022 WL 16704673, at *1 (Del. Ch. Nov. 4, 2022) (unpublished) (quoting Restatement (Second) of Torts § 766 (Am. L. Inst. 1979)).

[52] *NAMA Holdings., LLC v. Related WMC, LLC*, No. 7934-VCL, 2014 WL 6436647, at *26 (Del. Ch. Nov. 17, 2014) (unpublished).

[53] *Shearin v. E.F. Hutton Grp., Inc.,* 652 A.2d 578, 589 (Del. Ch. 1994) (citation omitted).

(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.[54]

Route alleges that Heuberger directed a widespread email solicitation campaign aimed at Route merchant partners, and Route lost profits as a result. As to motive, Route alleges that Heuberger stated in online posts and messages that he "created Navidium to 'screw with' and 'tak[e] down' Route, because he 'hate[s] Route.'"[55] Route asserts that Heuberger misled Route's then-clients, by portraying Navidium as a "technology that facilitates the lawful sale [of] shipping insurance" despite such services being "illegal."[56] As to proximity, it remains unclear to the Court whether Route can show that its customers terminated their contracts as a result of Heuberger's alleged wrongful conduct, though Route asserts that an increasing number of merchants who discontinue Route's services appear to cite "the false statements made in Heuberger and Navidium's solicitations."[57]

Because of the fact-intensive nature of this inquiry, the Court cannot yet determine, at the pleading stage, whether Heuberger acted with justification when he allegedly attempted to induce Route's customers to join Navidium with email solicitations containing disparaging statements about Route and misleading statements about Navidium. However, considering the well-pleaded factual allegations in the Amended Complaint and the factors for determining improper interference, the Court finds it plausible that Heuberger interfered with Route's customer

---

[54] *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (citing Restatement (Second) of Torts § 767 (Am. L. Inst. 1979)).

[55] Docket No. 78 ¶ 96.

[56] *Id.* ¶ 78.

[57] Docket No. 4-1 ¶ 34.

14

partnerships maliciously or in bad faith. Therefore, the Court finds that Route has sufficiently pleaded its tortious interference claim and denies Defendants' Motion to Dismiss as to Count Four.

### 4.  FALSE ADVERTISING

Route states a false advertising claim under the Lanham Act, which requires:

(1) that the defendant has made false or misleading statements as to the defendant's own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.[58]

Route alleges that Heuberger made false and misleading statements about Route and Navidium in several of his email solicitation campaigns, on Reddit and Twitter, and on Navidium's website and app store pages.[59] Heuberger argues that he did "not make literal, materially false statements in marketing the Navidium App, nor did [he] make impliedly false statements . . . ."[60]

"Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true."[61]

---

[58] *Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209–10 (D. Del. 2017).

[59] *See* Docket 78 ¶ 162.

[60] Docket No. 94, at 30.

[61] *Parker v. Learn Skills Corp.,* 530 F. Supp. 2d 661, 679 (D. Del. 2008) (citing cases).

"Misdescriptions or false representations of specific characteristics of a product, which are actionable under the Lanham Act, are distinguished from puffery, which is not actionable."[62]

As discussed, Heuberger's comments about Route are based on opinion and are therefore not actionable under the Lanham Act. However, Route's allegations that Navidium misrepresented or implied that merchants can lawfully offer shipping insurance or shipping protection without obtaining insurance licenses or permits and that Navidium is a shipping insurance company or technology "are straightforwardly factual assertions the veracity of which may be determined" by a review of the applicable law and an investigation of Heuberger's marketing of Navidium.[63] These alleged misrepresentations satisfy the first prong of the Lanham Act inquiry at the pleading stage because they are objectively verifiable. Additionally, Route alleges facts surrounding Heuberger's marketing of Navidium that satisfy the remaining elements of the Lanham Act inquiry. Therefore, the Court finds that Route has sufficiently pleaded its Lanham Act False Advertising claim and denies Defendants' Motion to Dismiss as to Count Five.

### 5. CONTRIBUTORY TRADEMARK INFRINGEMENT

Lastly, Route raises a contributory trademark infringement claim under the Lanham Act. It is unclear to the Court whether Route intends to argue trademark infringement under Section

---

[62] *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 366 (D. Del. 2009) (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)) (internal quotation marks omitted).

[63] *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14-JFB-SRF, 2019 WL 10252725, at *6 (D. Del. Apr. 30, 2019) (quoting *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, No. CV 14-5095 PA, 2014 WL 12591919, at *6 (C.D. Cal. Dec. 9, 2014)).

1114(1) or Section 1125(a) of the Lanham Act. Regardless "it is well-established that claims under Sections 1114 and 1125(a) are treated the same."[64]

To establish a claim for contributory infringement under either provision, "a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5) without the plaintiff's consent."[65] "The essential element in sustaining a claim under the Lanham Act is that the alleged infringement creates a likelihood of confusion on the part of consumers as to the source of the goods."[66] "Confusion can be of several sorts. For example, consumers may experience direct confusion of source when they develop the mistaken belief that the plaintiff is the origin of the defendant's goods or services—so that the defendant capitalizes on the plaintiff's good name."[67]

Route argues that Defendants knowingly facilitated infringement of Route's trademarks by installing versions of the Navidium widget under the names "Route Plus" and "Route Pro," which Route alleges is "likely to cause confusion, to cause mistake, or to deceive consumers."[68] Defendants, however, argue that Navidium is fully merchant-run after installation, and that Heuberger did not know and had no reason to know that merchants were replacing the Navidium name with names like "Route Plus" and "Route Pro." According to Heuberger, neither he nor his

---

[64] *Nike, Inc. v. B&H Customs Servs., Inc.*, 565 F. Supp. 3d 498, 508 (S.D.N.Y. 2021) (collecting cases).

[65] *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (quoting 15 U.S.C. § 1114(1)(a)).

[66] *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 502 (E.D. Pa. 2006) (internal quotation marks and citation omitted).

[67] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

[68] Docket No. 78 ¶ 170.

team installed their widget with any name other than "Navidium;" however, merchants are able to "white label" or rename the widget, but the code is not added to merchant's websites with a modified name. Route counters that "[b]ecause Navidium has no product offerings that do not include expert installation, Heuberger or another Navidium representative modifies the Navidium widget code to include the name and/or text chosen by the merchant every time the white-labeled Navidium widget is installed."[69]

Route represents that is has active, registered trademarks for the use of "Route" in the context of offering shipping protection and tracking through e-commerce merchants, which is prima facie evidence of the first element of contributory infringement.[70] Route's allegation that Navidium's "white-label" feature requires expert installation, which may require Heuberger or another Navidium representative to enter user-developed names in the Navidium widget code, supports that Navidium supplied its service "to identified individuals that it knows or has reason to know are engaging in trademark infringement."[71] Lastly, customers are likely to be confused or misled by a shipping protection service labeled "Route Pro" or "Route Plus," given that customers are likely to rely on name recognition when trusting a shipping protection service. Therefore, the Court finds that Route has sufficiently pleaded its Lanham Act Contributory Infringement claim and denies Defendants' Motion to Dismiss as to Count Six.

Based on the above, the Court will grant Defendants Motion to Dismiss as to Counts Two and Three, and deny the Motion as to Counts One, and Four through Six.

---

[69] Docket No. 4-2 ¶ 32.

[70] *See Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

[71] *Lens.com, Inc.*, 722 F.3d at 1253 (citation omitted).

III.     CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Amend First Amended Complaint (Docket No. 149) is GRANTED. It is further

ORDERED that Plaintiff file its Second Amended Complaint within fourteen (14) days of issuance of this Order. Plaintiff's Second Amended Complaint may allege claims against Heuberger and Rahman consistent with this order, but not Navidium. It is further

ORDERED that Defendants' Motion to Dismiss (Docket No. 94) is GRANTED IN PART and DENIED IN PART as explained herein.

DATED this 17th day of August, 2023.

BY THE COURT:

Ted Stewart
United States District Judge