# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| ROUTE APP, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARC HEUBERGER and NAVIDIUM APP, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 2:22-cv-00291-TS-JCB <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Jared C. Bennett |

District Judge Ted Stewart referred this case to Magistrate Judge Jared C. Bennett pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are two motions: (1) Defendant Marc Heuberger's ("Mr. Heuberger") Short Form Discovery Motion as to Interrogatory Nos. 13-16, 18, 19, and 21;[2] and (2) Mr. Heuberger's Short Form Discovery Motion as to Requests for Production Nos. 11, 12, 15-17, 21, and 23-25.[3] The court heard oral argument on these motions on July 31, 2023.[4] At that hearing, the court took under advisement Interrogatory Nos. 13, 16, 18, 19, and 21 and Requests for Production ("RFP") Nos. 11, 12, 21, 23, and 24.[5] Based upon the analysis set forth below, the court sustains Route's objections to Interrogatory Nos. 13, 16, 18,

---

[1] ECF No. 6.

[2] ECF No. 186.

[3] ECF No. 187.

[4] ECF No. 204.

[5] ECF No. 210.

19, and 21 and RFP Nos. 11, 12, 21, 23, and 24. Therefore, the court denies Mr. Heuberger's motions to compel Route's responses to these discovery requests.[6]

## LEGAL STANDARD

"The district court has broad discretion over the control of discovery . . . ."[7] With respect to the scope of discovery, Fed. R. Civ. P. 26(b)(1) provides:[8]

> Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under Fed. R. Civ. P. 34(b)(1), a request for production "must describe with reasonable particularity each item or category of items to be inspected" and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts."[9]

Fed. R. Civ. P. 33(a)(1) provides in part: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts . . . ."[10] Rule 33 does not define "discrete subparts" or when certain "subparts"

---

[6] ECF Nos. 186, 187.

[7] *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted).

[8] Fed. R. Civ. P. 26(b)(1).

[9] Fed. R. Civ. P. 34(b)(1)(A)-(B).

[10] Fed. R. Civ. P. 33(a)(1).

may count as more than one interrogatory. However, in its discussion on the issue, the Advisory Committee Note to the 1993 Amendment of Rule 33 provides: "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication."[11] In interpreting the Advisory Committee's guidance, leading commentators have put it this way: "[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question . . . [o]n the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation."[12] Thus many district courts apply the "related question" or "common theme" test when determining numerosity under Rule 33: "[s]ubparts directed at a 'common theme' should generally be counted as a single interrogatory, while 'subparts inquiring into discrete areas' are generally counted as multiple interrogatories.'"[13]

---

[11] Advisory Committee Note to 1993 Amendment to Fed. R. Civ. P. 33, 146 F.R.D. 675, 675-76.

[12] Charles A. Wright & Arthur R. Miller, 8B Fed. Prac. & Proc. Civ. § 2168.1 at 261 (3d ed. April 2022 update).

[13] *Ellis v. Hobbs Police Dep't*, 2018 U.S. Dist. LEXIS 208406, at *3 (D.N.M. Dec. 11, 2018); *see also Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 637 (D. Kan. Apr. 18, 2012); *Phillips v. Clark Cnty. Sch. Dist.*, No. 2:10-cv-0208-GMN-GWF, 2012 WL 135705, at *7-8 (D. Nev. Jan. 18, 2012); *Harnage v. Lightner*, No. 3:17-cv-00263, 2018 WL 6804482, at *n.3 (D. Conn. Dec. 27, 2018); *Bartnick v. CSX Transp., Inc.*, No. 1:11-cv-1120 (GLS) (TRF), 2012 WL 1565057, at *2 (N.D.N.Y. Apr. 27, 2012).; *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 WL 1068068, at *3-4 (W.D. Wash. Mar. 28, 2012).

ANALYSIS

## I.  Mr. Heuberger's Motions Are Denied.

Mr. Heuberger seeks an order compelling Route to provide further responses to (A) Interrogatory Nos. 13, 16, 18, and 19 and RFP Nos. 11, 12, 23, and 24 (Investor Information); (B) Interrogatory No. 21 ("Toggle" Technology Comparison); and (C) RFP No. 21 (Captive Insurance Entity Decision). The court addresses each category of discovery requests below and concludes that Route is not required to provide additional responses in any category.

### A.  <u>Interrogatory Nos. 13, 16, 18, and 19 and RFP Nos. 11, 12, 23, and 24 (Investor Information)</u>

The court sustains Route's objections to Interrogatory Nos. 13, 16, 18, and 19 and RFP Nos. 11, 12, 23, and 24. The information sought regarding Route's investors is neither relevant nor proportional to the needs of this case.

The requests at issue include the following:

> Interrogatory 13: Identify all current investors in Route.
>
> Interrogatory 16: Identify all investors in Route who participated in the "$200 million fundraise" that "established Route as the 'only package tracking company to achieve '*unicorn*' status …" as alleged in Paragraph 28 of the Amended Complaint.
>
> Interrogatory 18: Identify all potential investors in Route that declined to invest in Route since January 1, 2018.
>
> Interrogatory 19: Identify all investors in Route that divested from Route since January 1, 2018.
>
> Request for Production 11: Any and all documents concerning Route's "unicorn status" including that name and contact information for every investor, as well as their respective percentage ownership, who were involved in Route's "$200 million fundraise" that lead to Route's $1.25 billion valuation "in early 2022" as alleged in Paragraph 44 of the Amended Complaint.

> Request for Production 12: Any and all documents concerning investors who declined to invest in, or loan money to, Route between 2018 through the date hereof.
>
> Request for Production 23: Any and all documents concerning communications with potential investors in Route since January 1, 2018.
>
> Request for Production 24: Any and all documents concerning the amount of investment in Route by Route's current investors.

The Advisory Committee Notes for the 2000 Amendments to Rule 26 directs parties and courts to "focus on the actual claims and defenses involved in the action" in determining relevance for purpose of discovery.[14] Route alleges that Route's reputation and goodwill has been damaged in the marketplace such that it has affected Route's relationship with existing and prospective merchant partners and resulted in a loss of competitive advantage in the e-commerce shipping insurance marketplace.[15] The court concludes that the only "marketplace" relevant to Route's claims is the consumer marketplace. Route has not alleged damage to Route's reputation and goodwill amongst Route's current, former, or prospective investors, damages related to a loss of market share, nor a loss of competitive advantage in gaining and retaining investors. Therefore, investor information is of scant, if any, relevance in this case.

Mr. Heuberger argues that investor information is relevant because investors' views about Route can provide "a different window into [the] marketplace"[16] where Route has allegedly suffered such damages and irreparable harm.[17] Mr. Heuberger asserts that, if Mr. Heuberger can

---

[14] Advisory Committee Note to 2000 Amendments to Fed. R. Civ. P. 26(b)(1).
[15] ECF No. 78 at ¶¶ 8, 97, 111, 116, 120, 133, 180.
[16] ECF No. 223 at 5:16-17.
[17] ECF No. 78 at ¶ 180.

5

learn whether Route's investors still view Route as a good investment—despite or regardless of Navidium's impact—then Mr. Heuberger might be able to demonstrate that Route has not suffered damages in the marketplace as a result of Navidium.[18] Mr. Heuberger also argues that Route's allegations regarding loss of competitive advantage in the e-commerce shipping insurance marketplace[19] open the door to information beyond merchant partner relationships.[20]

The court concludes that Mr. Heuberger's relevancy argument is far too speculative. The court is unpersuaded by the view that the marketplace Route places at issue in this case can be understood to mean the *investor* marketplace, in addition to the consumer marketplace. Nor is the court convinced that particular investors' (or potential investors') views are a relevant means to measure alleged damages within the consumer marketplace.[21] Mr. Heuberger's argument amounts to the functional equivalent of a defendant accused of stealing candy bars from a grocery store claiming at sentencing that the store was not damaged by the theft because people are still investing in the grocery store. Here, Mr. Heuberger is essentially accused of stealing

---

[18] *See, e.g.*, ECF No. 223 at 9:4 to 10:11; 14:21 to 15:20; 16:8 to 17:1.

[19] ECF No. 78 at ¶¶ 133, 180.

[20] ECF No. 223 at 13:1-9, 15:23 to 16:1.

[21] If Route's amended complaint left the bounds of the "marketplace" in this case uncertain, the court finds Black's Law Dictionary's definition of "marketplace" illuminating: "the business environment *in which goods and services are sold* in competition with other suppliers." *Marketplace*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Further, Black's Law Dictionary defines "business reputation" as "*the public's evaluation of* and regard for the quality of a company's goods or services." *Reputation*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Under these definitions, investors' evaluations of the impact Navidium may have on their decision to invest in Route is not a reasonable inquiry for determining damage to Route's reputation and goodwill in the marketplace.

merchants from Route. That is the relevant harm, not whether people are still willing to invest in Route. Therefore, the investor materials are irrelevant.

As further support for its view on investor relevance, the court has not uncovered any reported case in which the parties utilized the opinions of individual investors to determine a loss of competitive advantage or lack thereof. The court concludes that Mr. Heuberger's proposed method for discovering information about Route's reputation, goodwill, and competitive advantage is too roundabout to be relevant to Route's claims. Given the lack of relevance of investor information to the claims and defenses in this action, the court will not compel Route to respond.

Moreover, even assuming some semblance of relevance from current, past, and potential investor information, Mr. Heuberger's requests are also not proportional to the needs of this case. RFP Nos. 11, 12, 23, and 24 are overbroad on their face in that they seek "any and all" documents of the categories requested.[22] This could represent a wide swath of potentially irrelevant information. Further, the most logical method for resolving the issues related to Route's reputation is through merchant information (and reciprocal discovery regarding

---

[22] Within the parameters set under Rule 26(b)(1), Fed. R. Civ. P. 34(b)(1)(A)-(B) provides that a request for production "*must*" (A) "describe with reasonable particularity each item or category of items to be inspected" and (B) "specify a reasonable time, place, and manner for the inspection and for performing the related acts." "Though what qualifies as 'reasonabl[y] particular' surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008). "This reasonable particularity requirement should cause counsel to think at least twice about issuing a document request for 'all documents' . . . ." *Schmelzer v. IHC Health Servs., Inc.*, No. 2:19-CV-00965-TS-JCB, 2022 WL 16646456, at *4 (D. Utah Feb. 10, 2022).

merchant partners is still ongoing).[23] The court encourages the parties to focus on the specific claims and defenses in this matter for the "just, speedy, and inexpensive" resolution of this case.[24] Accordingly, the court denies Mr. Heuberger's motion to compel Route's responses to Interrogatory Nos. 13, 16, 18, and 19 and RFP Nos. 11, 12, 23, and 24.

### B. Interrogatory No. 21 "Toggle" Technology Comparisons

The court sustains Route's objections to Interrogatory No. 21. The court concludes that Interrogatory No. 21 represents fourteen subparts and, therefore, Mr. Heuberger exceeds Rule 33's numerical limit at subpart (e) of Interrogatory No. 21. However, the court will not compel Route to respond to subparts (a)-(e) of Interrogatory No. 21 because requiring Route to produce comparisons between Route's "toggle" function and other shipping protection companies is not proportional to the needs of this case.

Interrogatory 21 requests the following:

> Identify and describe all differences between Route's "widget" or "toggle" as alleged in Paragraph 85 of the Amended Complaint *i.e.* "To Route's knowledge, Route is the only company to independently develop this toggle function for shipping protection on Shopify websites[.]" and the "widget" or "toggle" technology used by the following shipping protection companies:
> (a) Engarde
> (b) Guide Shipping Insurance
> (c) Corso (Green Shipping Protection)

---

[23] In his primer on proportionality, United States District Judge Paul W. Grimm compares discovery to target shooting: "No one shoots at a target by aiming for the outermost circles. You aim first for the bull's-eye. Discovery should be approached the same way—go first for what is most important, then follow up (if needed) with the information of lesser value." Judge Paul W. Grimm, *Practical Ways to Achieve Proportionality During Discovery and Reduce Costs in the Pretrial Phase of Federal Civil Cases*, 51 Akron L. Rev. 721, 734 (2017). Here, merchant information is the "bull's-eye," discovery that the parties are still working to exchange. Investor information is at best an outer circle and therefore not proportional.

[24] Fed. R. Civ. P. 1.

       (d) Order Protection
       (e) Insurify/Webinopoly
       (f) Shiptection
       (g) Convoy Order Protection
       (h) G1/G1 Branded Shipping Warranties
       (i) Shipaid
       (j) Ship-Safely
       (k) Eco Cart
       (l) Shipinsure
       (m) Shipping Insurance
       (n) Shield Shipping Insurance

Route has alleged that "Navidium's consumer-facing widget on merchant websites is a clear imitation of the Route widget [Mr. Heuberger] had access to through ElevatiONE's Shopify website, both in terms of appearance and functionality."[25] Route also alleges that "[t]o Route's knowledge, Route is the only company to independently develop this toggle function for shipping protection on Shopify websites."[26] Mr. Heuberger argues that these competitors in the shipping insurance field all use a similar "widget" and "toggle," and, therefore, Route's claim that Mr. Heuberger has copied Route's "unique" toggle is meritless unless Route can distinguish itself from these other technologies.[27]

The court first concludes that Interrogatory No. 21 violates Rule 33 numerosity standards because it requires responses to fourteen questions related to fourteen separate subject areas. For example, if Route were to identify and describe all differences between Route's "toggle" and Engarde's "toggle," this question could "be answered fully and completely without answering the second question [identify and describe all differences between Route's "toggle" and Guide

---

[25] ECF No. 78 at ¶ 85.

[26] ECF No. 78 at ¶ 85.

[27] ECF No. 223 at 36:23 to 37:14.

9

Shipping Insurance's "toggle"]."[28] Thus, the question of differences between Route's "toggle" and one competitor's "toggle" is totally independent of the question of differences between Route's "toggle" and another competitor's "toggle."[29] Each subpart necessitates a separate examination and detailed description. Applying this reasoning, Interrogatory No. 21 and its subparts should be considered Interrogatory Nos. 21-34. Therefore, subpart (e) should be considered the 25th interrogatory.

However, the court will not compel Route's responses to subparts (a)-(e) of Interrogatory No. 21 because this task is not proportional to the needs of this case. Route has not alleged that these competitors are copying Route's "toggle" function nor that Route's "toggle" is completely unique from all competitors. Route's allegation is that Route is "the only company to independently develop this toggle function for shipping protection on Shopify websites"[30] and that Navidium's "toggle" function is a "copy-cat" of Route's technology.[31] Therefore, a time-consuming analysis about the ways competitors' technology is similar or different from Route's is fruitless in the pursuit of determining whether Navidium's technology is "wearing Route's clothes."[32] If Mr. Heuberger still believes this information is important in developing his defense,

---

[28] *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997).

[29] *See id.*

[30] ECF No. 78 at ¶ 85.

[31] ECF No. 78 at ¶ 50.

[32] ECF No. 78 at ¶ 50.

he is welcome to conduct such an analysis of competitors' technology himself.[33] The court denies Mr. Heuberger's motion to compel Route's response to Interrogatory No. 21.

    C.  <u>RFP No. 21 (Captive Insurance Entity Decision)</u>

The court sustains Route's objections to RFP 21 because the production of these documents is not proportional to the needs of this case and the burden on Route to produce these documents far outweighs the benefit this discovery could provide. RFP 21 requests "any and all documents concerning Route's decision to establish, Route's establishment of, and Route's maintenance of, a captive insurance entity in connection with Route's business." In response, Route agreed to produce non-privileged documents sufficient to identify its captive insurance provider and the insurance policies associated therewith. During the parties' meet and confer communications, Route also agreed to provide Route's licenses in 48 states as well as documents that identify the relevant insurance laws of all 50 states.

At the July 31 hearing, Mr. Heuberger argued that this information is relevant to his defenses because Route has alleged that Navidium is performing its services in violation of insurance regulations.[34] Mr. Heuberger asserts that—in making these claims—Route is maintaining that

---

[33] By way of example, in patent infringement actions, neither party may be required to answer interrogatories calling for a comparison or explanation, or knowledge of attempts by others to use a particular patented method. *See, e.g.*, *Looper v. Colonial Coverlet Co.,* 29 F. Supp. 125, *127 (E.D. Tenn. 1939) (interrogatory requiring defendant to illustrate by drawings in what manner defendant's structure deviated from the patented machine need not be answered, since comparisons and explanations are not proper in such interrogatories); *Byron Weston Co. v. L.L. Brown Paper Co.*, 13 F.2d 412, *413 (D. Mass. 1926) (interrogatory asking whether defendant had ever attempted to use particular method held proper, but further inquiry whether it knew of such attempts by others was improper).
[34] ECF No. 223 at 63:1-2. *See, e.g.*, ECF No. 78 at 2-3.

creating a captive insurance entity is the "only way to do [business legally]."[35] Therefore, Mr. Heuberger seeks the documents requested in RFP 21 to determine how Route arrived at the decision to establish and maintain a captive insurance entity and whether Route employees discussed the legality of other models (such as the insurance arrangement Navidium selected) in arriving at its conclusion.[36]

Regardless of the determinations Route made when choosing to establish and maintain a captive insurance entity—to the exclusion of other business models—the legality of Navidium's business model cannot be determined by reviewing documents concerning Route's decision. The law is the law. Moreover, Mr. Heuberger requests *any and all* documents concerning Route's decision to establish and maintain a captive insurance entity. This breadth of this language fails to meet Rule 34's "reasonable particularity" standard.[37] The court concludes that whether Navidium's insurance arrangement is legally compliant is a legal question that documents responsive to RFP 21 cannot answer. Accordingly, the court denies Mr. Heuberger's motion to compel Route's response to RFP No. 21.

---

[35] ECF No. 223 at 63:8.

[36] ECF No. 223 at 63:13-24.

[37] Fed. R. Civ. P. 34(b)(1)(A)-(B); *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008).

## CONCLUSION AND ORDER

Based upon the foregoing analysis, IT IS HEREBY ORDERED:

1. Mr. Heuberger's Short Form Discovery Motion as to Interrogatory Nos. 13-16, 18, 19, and 21[38] is DENIED.

2. Mr. Heuberger's Short Form Discovery Motion as to Requests for Production Nos. 11, 12, 15-17, 21, and 23-25[39] is DENIED.[40]

IT IS SO ORDERED.

DATED this 18th day of August 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[38] ECF No. 186.

[39] ECF No. 187.

[40] Where, as here, the court has granted Mr. Heuberger's motions in part (ECF No. 210) and denied his motions in part (see above), Fed. R. Civ. P. 37(a)(5)(C) provides that the court "may . . . apportion the reasonable expenses for the motion." The court declines to do so because the parties' arguments regarding the motions at issue are substantially justified.