THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROUTE APP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MARC HEUBERGER and ATIQUR RAHMAN, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT ATIQUR RAHMAN'S MOTION TO DISMISS |
| MARC HEUBERGER, <br><br> Counterclaimant and Third-Party Plaintiff, <br><br> vs. <br><br> ROUTE APP, INC., <br><br> Counterclaim Defendant, <br><br> and <br><br> TRAVIS ROBINSON, BRAD PEARSON, and SAFE ORDER SOLUTIONS, LLC, <br><br> Third-Party Defendants. | Case No. 2:22-cv-00291-TS-JCB <br> Judge Ted Stewart <br> Magistrate Judge Jared C. Bennett |

This matter comes before the Court on Defendant Atiqur Rahman's Motion to Dismiss the Corrected Second Amended Complaint for Lack of Personal Jurisdiction.[1] For the reasons discussed below, the Court will deny the Motion.

## I.  BACKGROUND

The Corrected Second Amended Complaint" ("the Operative Complaint") alleges the following: Route is a package tracking company that provides post-purchase services and products to e-commerce merchants.[2] Navidium App, a former defendant in the case, is an application which offers e-commerce merchants a widget to charge their customers a premium to cover shipping losses, similar to Route.[3] Defendant Marc Heuberger and Rahman developed Navidium App in 2021 to directly compete with Route. By March 2022, Heuberger and Rahman emailed hundreds of Route's customers, including some in Utah, disparaging Route and touting Navidium as a better alternative.[4]

Route filed an initial complaint on April 28, 2022, against Heuberger, his e-commerce store ElevatiONE, and Navidium App, alleging breach of contract, commercial disparagement, intentional tortious interference with contractual relations, misappropriation of trade secrets, and contributory trademark infringement.[5] Navidium App filed a Motion to Dismiss for lack of personal jurisdiction, and the Court granted the Motion.[6] After numerous other filings, Route

---

[1] Docket No. 425.

[2] Docket No. 329 ¶ 1.

[3] *Id.* ¶¶ 84–90.

[4] *Id.* ¶¶ 55–66.

[5] Docket No. 2.

[6] Docket No. 70.

filed the Operative Complaint against Heuberger and Rahman on November 10, 2023.[7] The Operative Complaint seeks injunctive relief against Heuberger and Rahman and brings claims for breach of contract, commercial disparagement, tortious interference with contractual relations, Lanham Act violations, and civil conspiracy.[8] On February 23, 2024, Rahman filed the instant motion. Route filed a Response on May 3, 2024.[9] Rahman did not file a Reply.

## II.  DISCUSSION

Rahman moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing he has no minimum contacts with Utah. Under Rule 12(b)(2), the plaintiff bears the burden of showing that the Court has personal jurisdiction over each defendant.[10] Where, as here, there has been no evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.[11] If the defendant challenges the jurisdictional allegations, the plaintiff must support those allegations by competent proof of the supporting facts.[12] In evaluating the plaintiff's showing, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all

---

[7] Docket No. 329

[8] *Id.* ¶¶ 127–176.

[9] Docket No. 448.

[10] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008)).

[11] *Shrader*, 633 F.3d at 1239; *see Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal citation omitted).

[12] *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (internal citation omitted).

factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[13]

Whether a federal court has personal jurisdiction in a case arising under federal law begins with a two-step inquiry.[14] First, the Court must determine "whether any applicable statute authorizes the service of process on defendants."[15] Second, the Court must determine "whether the exercise of such statutory jurisdiction comports with constitutional due process demands."[16] Here, the Lanham Act[17] does not authorize nationwide service of process, so the Court turns to Federal Rules of Civil Procedure 4(k)(1)(A), which states that district courts have personal jurisdiction over defendants according to the state where the district court is located.[18]

Utah's long-arm statute authorizes personal jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[19] Therefore, the personal jurisdiction analysis collapses into one inquiry: whether exercising jurisdiction comports with due process.[20] Due process requires that

---

[13] *Wenz*, 55 F.3d at 1505 (internal quotation marks and citations omitted).

[14] *Dudnikov*, 514 F.3d at 1070.

[15] *Id*.

[16] *Id*. (citation omitted).

[17] 15 U.S.C. §§ 1051 *et seq*.

[18] Fed. R. Civ. P. 4(k)(1)(A).

[19] Utah Code Ann. § 78B–3–201(3); *see also Starways, Inc. v. Curry,* 980 P.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute must be extended to the fullest extent allowed by due process of law.") (internal quotation marks and citation omitted).

[20] *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (explaining that the personal jurisdiction inquiry under the Utah long-arm statute is a due process one).

"defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"[21]

Such "minimum contacts" may give rise to either general or specific personal jurisdiction.[22] General jurisdiction requires that a defendant have contacts with the forum "so continuous and systematic as to render it essentially at home in the forum State."[23] Specific jurisdiction applies when a party has minimum contacts with the forum state and the defendant has not presented a "compelling case that the presence of some other consideration would render jurisdiction unreasonable."[24] To have minimum contacts, a defendant must have taken some action "by which it purposefully avails itself of the privilege of conducting activities within the forum State" and the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum."[25]

Courts find purposeful direction when a defendant "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and

---

[21] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

[22] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (citation omitted).

[23] *Goodyear Dunlop Tires Operations S.A. v Brown,* 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted).

[24] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[25] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotation marks and citations omitted).

residents of the forum."[26] There are multiple purposeful direction frameworks, including the continuing relationships test, the market exploitation test, and the harmful effects test.[27]

The continuing relationships test finds purposeful direction when a defendant has created legal relationships, such as contracts or agreements, with parties in the forum state.[28] The market exploitation test finds purposeful direction with "[a]n out-of-state defendant's continuous and deliberate exploitation of the forum state market."[29] Deliberate exploitation includes "(a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state."[30] Finally, the harmful effects test requires "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state."[31] In *Dudnikov*, because the out-of-state defendants knew that plaintiff's business was based in the forum state and the plaintiff's business would be affected by the defendant's actions, the Tenth Circuit held there was purposeful direction."[32]

Rahman argues he has not purposefully directed any activity in Utah under any theory and argues that the Court should grant his Motion to Dismiss on the same basis as it granted

---

[26] *Burger King Corp.*, 471 U.S. at 475–76 (internal quotation marks and citations omitted).

[27] *Old Republic Ins. Co. v. Cont'l Motors Inc.*, 877 F.3d 895, 905–06 (10th Cir. 2017) (internal quotation marks and citation omitted).

[28] *Burger King Corp.*, 471 U.S. at 473.

[29] *Old Republic Ins. Co.*, 877 F.3d at 906 (internal quotation marks and citation omitted).

[30] *Id.* at 915.

[31] *Dudnikov*, 514 F.3d at 1072.

[32] *Id. at* 1077–78.

Nividium's Motion to Dismiss.[33] The Court finds that the Operative Complaint does not make a prima facie showing that Rahman had a "continuing relationship" or legal agreement with any merchants or Route customers in Utah. Nor does the Operative Complaint make a prima facie showing that the emails created "(a) high sales volume and large customer base and revenues and (b) extensive nationwide advertising or ads targeting the forum state" as required by the market exploitation test because there is no indication that Navidium's sales were high in Utah as opposed to other states, nor that there was extensive advertising in Utah.[34]

However, the Court finds that the Operative Complaint makes a prima facie showing that Rahman caused harmful effects in the forum state.[35] First, the Operative Complaint alleges that the emails and communications with merchants in Utah were intentional acts used to mimic Route, poach its customers, and damage Route's business. Second, the emails were expressly aimed at merchants located in Utah. Although there is a dispute about how many merchants were targeted in Utah specifically as opposed to other states, the Court is required to interpret all factual disputes in the plaintiff's favor at this stage. Accordingly, the Operative Complaint indicates that the emails were sent with knowledge that they would be read in Utah by Utah merchants.[36] Additionally, Route supplemented its Operative Complaint with "competent proof of the supporting facts" that Rahman used an Excel spreadsheet listing Route's merchant

---

[33] *See* Docket No. 70.

[34] *Old Republic Ins. Co.*, 877 F.3d at 915.

[35] *Dudnikov*, 514 F.3d at 1072 ("(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state").

[36] Docket No. 329 ¶¶ 65–67.

customers and their contact information, including their Utah addresses.[37] Third, Route's headquarters are in Lehi, Utah, and therefore it is foreseeable that the brunt of the damage would be felt in Utah. Unlike the Court's previous decision granting Navidium's Motion to Dismiss for lack of personal jurisdiction because of internet advertisements and social media posts, the Operative Complaint alleges that Rahman specifically sent emails to Utah-based merchants.[38] Like the finding in *Dudnikov*, the Operative Complaint states that Rahman and Heuberger understood the harm would be felt in Utah and targeted Utah merchants, hoping to "tak[e] down" and "screw with" Route.[39] Thus, the Court finds that Route made a prima facie showing of minimum contacts through the harmful effects prong.

The second step of the minimum contacts test is whether the plaintiff's injuries "arise out of" the defendant's activities in the forum.[40] For a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[41]

Rahman argues that because he does not have a physical presence in Utah and his online presence is not specifically connected to Utah, the Operative Complaint does not satisfy this

---

[37] *Pytlik*, 887 F.2d at 1376 ("In ascertaining the facts necessary to establish jurisdiction, the court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits. All factual disputes are resolved in the plaintiff's favor.") (citation omitted).

[38] Docket No. 70 at 7.

[39] Docket No. 329 ¶ 1.

[40] *Ford Motor Co.*, 592 U.S. at 1025 (internal quotation marks and citations omitted).

[41] *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (internal quotation marks and citation omitted).

prong. The Operative Complaint alleges email solicitation of Utah merchants with the intent to harm a Utah business through emails and other online media. The intentional targeting of Route and its customers, as well as the harm caused within this state gives rise to each of the causes of action listed in the Operative Complaint. Accordingly, the Operative Complaint makes a prima facie showing that the cause of action arises out of contact with the forum state.

Finally, the analysis turns to whether exercising jurisdiction over the defendant "offend[s] traditional notions of fair play and substantial justice."[42] The Tenth Circuit has set forth the fair play and substantial justice factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[43]

"A defendant must present a 'compelling' case that factors like these render jurisdiction unreasonable."[44]

Rahman did not explicitly address the fair play factors in his Motion, and his only references the factors when he asserts that he lives in Bangladesh. Accordingly, the Court finds Route's arguments persuasive. Indeed, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome."[45] Rahman, as a web developer,

---

[42] *Int'l Shoe Co.,* 326 U.S. at 316.

[43] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co., v. Sup. Ct. of Ca., Solano Cnty*, 480 U.S. 102, 113 (1987)).

[44] *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. DE C.V.*, 970 F.3d 1269, 1298 (10th Cir. 2020) (quoting *Burger King Corp.*, 471 U.S. at 477).

[45] *Edizone v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1289 (D. Utah 2016) (internal quotation marks and citation omitted).

also likely has technical accessibility that can help him participate in proceedings in this district without much of a burden. Additionally, Rahman hired local counsel who filed his Motion to Dismiss. Accordingly, this factor weighs in favor of personal jurisdiction. Second, Utah has a high interest in resolving the dispute as the plaintiff and alleged victim, Route, is domiciled in Utah. Third, Route has a high interest in receiving convenient and effective relief, especially as this case has been litigated in this district over the past three years and the alleged harm to Route's business is serious and affects this state. Fourth, in the event of trial, Route argues that the bulk of its witnesses are located in this forum, and it would be more efficient and convenient to keep proceedings here. Route does not address the fifth factor, but the Court finds that there is nothing alleged to indicate that another state has a greater interest in the case than Utah. Accordingly, the Court finds that the fair play factors weigh in favor of exercising personal jurisdiction over Rahman.

In summary, the Court finds that Rahman is subject to specific personal jurisdiction in Utah. Because the Operative Complaint has met its burden showing that personal jurisdiction over Rahman does not violate due process, the Court will not address Route's alternative theories of personal jurisdiction.

Finally, Rahman also alleges that he is not subject to the Court's jurisdiction on the remaining claims rooted in diversity. A federal court sitting in diversity "may exercise personal jurisdiction over a resident so long as there exist minimum contacts between the defendant and the forum state."[46] The state law claims include claims for commercial disparagement,

---

[46] *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (internal quotation marks and citation omitted).

defamation per se, and tortious interference with contractual relations. However, as the state law claims arise out of the same nucleus of operative fact as those related to the claims arising under federal law, the Court may exercise pendent personal jurisdiction.[47] And as discussed above, the Court finds that Route has made a prima facie showing that Rahman has minimum contacts with Utah. Accordingly, the Court finds that Rahman is also subject to the Court's jurisdiction for the claims brought under diversity jurisdiction.

### III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion (Docket No. 425) is DENIED.

DATED this 27th day of May, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[47] *See U.S. v. Botefuhr*, 309 F.3d 1263, 1273–75 (10th Cir. 2002) (discussing pendent personal jurisdiction).